# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| RONALD DEAN HOLLOWAY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 1:11CV61JCH/MLM |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This is an action under 42 U.S.C. § 405(g) for judicial review of the final decision of Michael

J. Astrue ("Defendant") partially denying the application of Ronald Dean Holloway ("Plaintiff") for

Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. Plaintiff has filed

a brief in support of the Complaint. Doc.17. Defendant has filed a brief in support of the Answer.

Doc. 18. Plaintiff filed a Reply. Doc. 18. This matter was referred to the undersigned United States

Magistrate Judge pursuant to 28 U.S.C. § 636(b). Doc. 5.

## II.
## PROCEDURAL HISTORY

Plaintiff filed his application for SSI on April 24, 2008, alleging a disability onset date of

January 2, 2005. Tr. 148-50. His application was denied and he requested a hearing before an

Administrative Law Judge ("ALJ"). Tr. 92, 105. After a hearing, held on December 11, 2009, the

ALJ found that Plaintiff was not disabled through the date of the decision. Tr. 8-91. The Appeals

Council denied Plaintiff's Request for Review on March 14, 2011. Tr. 1-3. As such, the decision of

the ALJ stands as the final decision of the Commissioner.

## II.
## LEGAL STANDARDS

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920, 404.1529. "'If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled.'" Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005) (quoting Eichelberger v. Barnhart, 390 F.3d 584, 590-91 (8th Cir. 2004)). In this sequential analysis, the claimant first cannot be engaged in "substantial gainful activity" to qualify for disability benefits. 20 C.F.R. §§ 416.920(b), 404.1520(b). Second, the claimant must have a severe impairment. 20 C.F.R. §§ 416.920(c), 404.1520(c). The Social Security Act defines "severe impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities." Id. "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work." Page v. Astrue, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting Caviness v. Massanari, 250 F.3d 603, 605 (8th Cir. 2001) (citing Nguyen v. Chater, 75 F.3d 429, 430-31 (8th Cir. 1996))).

Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d); pt. 404, subpt. P, app. 1. If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. Id.

Fourth, the impairment must prevent the claimant from doing past relevant work. 20 C.F.R. §§ 416.920(f), 404.1520(f). The burden rests with the claimant at this fourth step to establish his or her Residual Functional Capacity ("RFC"). Steed v. Astrue, 524 F.3d 872, 874 n.3 (8th Cir. 2008)

("Through step four of this analysis, the claimant has the burden of showing that she is disabled."); Eichelberger, 390 F.3d at 590-91; Masterson v. Barnhart, 363 F.3d 731, 737 (8th Cir. 2004); Young v. Apfel, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000). The ALJ will review a claimant's RFC and the physical and mental demands of the work the claimant has done in the past. 20 C.F.R. § 404.1520(f).

Fifth, the severe impairment must prevent the claimant from doing any other work. 20 C.F.R. §§ 416.920(g), 404.1520(g). At this fifth step of the sequential analysis, the Commissioner has the burden of production to produce evidence of other jobs in the national economy that can be performed by a person with the claimant's RFC. Steed, 524 F.3d at 874 n.3; Young, 221 F.3d at 1069 n.5. If the claimant meets these standards, the ALJ will find the claimant to be disabled. "The ultimate burden of persuasion to prove disability, however, remains with the claimant." Id. See also Harris v. Barnhart, 356 F.3d 926, 931 n.2 (8th Cir. 2004) (citing 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003)); Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five."); Charles v. Barnhart, 375 F.3d 777, 782 n.5 (8th Cir. 2004) ("[T]he burden of production shifts to the Commissioner at step five to submit evidence of other work in the national economy that [the claimant] could perform, given her RFC.").

Even if a court finds that there is a preponderance of the evidence against the ALJ's decision, that decision must be affirmed if it is supported by substantial evidence. Clark v. Heckler, 733 F.2d 65, 68 (8th Cir. 1984). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." Krogmeier v. Barnhart, 294 F.3d 1019, 1022 (8th Cir. 2002). See also Cox v. Astrue, 495 F.3d 614, 617 (8th Cir. 2007). In Bland v. Bowen, 861 F.2d 533, 535 (8th Cir. 1988), the Eighth Circuit Court of Appeals held:

> [t]he concept of substantial evidence is something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the Secretary may decide to grant or deny benefits without being subject to reversal on appeal.

See also Lacroix v. Barnhart, 465 F.3d 881, 885 (8th Cir. 2006) ("[W]e may not reverse merely because substantial evidence exists for the opposite decision.") (quoting Johnson v. Chater, 87 F.3d 1015, 1017 (8th Cir. 1996)); Hartfield v. Barnhart, 384 F.3d 986, 988 (8th Cir. 2004) ("[R]eview of the Commissioner's final decision is deferential.").

It is not the job of the district court to re-weigh the evidence or review the factual record de novo. Cox, 495 F.3d at 617; Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); McClees v. Shalala, 2 F.3d 301, 302 (8th Cir. 1993); Murphy v. Sullivan, 953 F.2d 383, 384 (8th Cir. 1992). Instead, the district court must simply determine whether the quantity and quality of evidence is enough so that a reasonable mind might find it adequate to support the ALJ's conclusion. Davis v. Apfel, 239 F.3d 962, 966 (8th Cir. 2001) (citing McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000)). Weighing the evidence is a function of the ALJ, who is the fact-finder. Benskin v. Bowen, 830 F.2d 878, 882 (8th Cir. 1987). See also Onstead v. Sullivan, 962 F.2d 803, 804 (8th Cir. 1992) (holding that an ALJ's decision is conclusive upon a reviewing court if it is supported by "substantial evidence"). Thus, an administrative decision which is supported by substantial evidence is not subject to reversal merely because substantial evidence may also support an opposite conclusion or because the reviewing court would have decided differently. Krogmeier, 294 F.3d at 1022. See also Eichelberger, 390 F.3d at 589; Nevland v. Apfel, 204 F.3d 853, 857 (8th Cir. 2000) (quoting Terrell v. Apfel, 147 F.3d 659, 661 (8th Cir. 1998)); Hutsell v. Massanari, 259 F.3d 707, 711 (8th Cir. 2001).

To determine whether the Commissioner's final decision is supported by substantial evidence, the Court is required to review the administrative record as a whole and to consider:

> (1) Findings of credibility made by the ALJ;
>
> (2) The education, background, work history, and age of the claimant;
>
> (3) The medical evidence given by the claimant's treating physicians;
>
> (4) The subjective complaints of pain and description of the claimant's physical activity and impairment;
>
> (5) The corroboration by third parties of the claimant's physical impairment;
>
> (6) The testimony of vocational experts based upon proper hypothetical questions which fairly set forth the claimant's physical impairment; and
>
> (7) The testimony of consulting physicians.

Brand v. Sec'y of Dep't of Health, Educ. & Welfare, 623 F.2d 523, 527 (8th Cir. 1980); Cruse v. Bowen, 867 F.2d 1183, 1184-85 (8th Cir. 1989).

Additionally, an ALJ's decision must comply "with the relevant legal requirements." Ford v. Astrue, 518 F.3d 979, 981 (8th Cir. 2008).

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 416(i)(1)(A); 42 U.S.C. § 423(d)(1)(A).

"While the claimant has the burden of proving that the disability results from a medically determinable physical or mental impairment, direct medical evidence of the cause and effect relationship between the impairment and the degree of claimant's subjective complaints need not be produced." Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). When evaluating evidence of pain, the ALJ must consider:

(1) the claimant's daily activities;

(2) the subjective evidence of the duration, frequency, and intensity of the claimant's pain;

(3) any precipitating or aggravating factors;

(4) the dosage, effectiveness, and side effects of any medication; and

(5) the claimant's functional restrictions.

Baker v. Sec'y of Health & Human Servs., 955 F.2d. 552, 555 (8th Cir. 1992); Polaski, 739 F.2d at 1322. The absence of objective medical evidence is just one factor to be considered in evaluating the plaintiff's credibility. Id. The ALJ must also consider the plaintiff's prior work record, observations by third parties and treating and examining doctors, as well as the plaintiff's appearance and demeanor at the hearing. Polaski, 739 F.2d at 1322; Cruse, 867 F.2d at 1186.

The ALJ must make express credibility determinations and set forth the inconsistencies in the record which cause him to reject the plaintiff's complaints. Guilliams, 393 F.3d at 801; Masterson v. Barnhart, 363 F.3d 731, 738 (8th Cir. 2004); Lewis v. Barnhart, 353 F.3d 642, 647 (8th Cir. 2003); Hall v. Chater, 62 F.3d 220, 223 (8th Cir. 1995). It is not enough that the record contains inconsistencies; the ALJ must specifically demonstrate that he considered all of the evidence. Robinson, 956 F.2d at 841; Butler v. Sec'y of Health & Human Servs., 850 F.2d 425, 429 (8th Cir. 1988). The ALJ, however, "need not explicitly discuss each Polaski factor." Strongson v. Barnhart, 361 F.3d 1066, 1072 (8th Cir. 2004). See also Steed, 524 F.3d at 876 (citing Lowe v. Apfel, 226 F.3d 969, 972 (8th Cir. 2000)). The ALJ need only acknowledge and consider those factors. Id. Although credibility determinations are primarily for the ALJ and not the court, the ALJ's credibility assessment must be based on substantial evidence. Rautio v. Bowen, 862 F.2d 176, 179 (8th Cir. 1988); Millbrook v. Heckler, 780 F.2d 1371, 1374 (8th Cir. 1985).

RFC is defined as what the claimant can do despite his or her limitations, 20 C.F.R. § 404.1545(a)(1), and includes an assessment of physical abilities and mental impairments. 20 C.F.R. § 404.1545(b)-(e). The Commissioner must show that a claimant who cannot perform his or her past relevant work can perform other work which exists in the national economy. Karlix v. Barnhart, 457 F.3d 742, 746 (8th Cir. 2006); Nevland, 204 F.3d at 857 (citing McCoy v. Schweiker, 683 F.2d 1138, 1146-47 (8th Cir. 1982) (en banc)). The Commissioner must first prove that the claimant retains the RFC to perform other kinds of work. Goff, 421 F.3d at 790; Nevland, 204 F.3d at 857. The Commissioner has to prove this by substantial evidence. Warner v. Heckler, 722 F.2d 428, 431 (8th Cir. 1983). Second, once the plaintiff's capabilities are established, the Commissioner has the burden of demonstrating that there are jobs available in the national economy that can realistically be performed by someone with the plaintiff's qualifications and capabilities. Goff, 421 F.3d at 790; Nevland, 204 F.3d at 857.

To satisfy the Commissioner's burden, the testimony of a vocational expert ("VE") may be used. An ALJ posing a hypothetical to a VE is not required to include all of a plaintiff's limitations, but only those which he finds credible. Goff, 421 F.3d at 794 ("[T]he ALJ properly included only those limitations supported by the record as a whole in the hypothetical."); Rautio, 862 F.2d at 180. Use of the Medical-Vocational Guidelines is appropriate if the ALJ discredits the plaintiff's subjective complaints of pain for legally sufficient reasons. Baker v. Barnhart, 457 F.3d 882, 894-95 (8th Cir. 2006); Carlock v. Sullivan, 902 F.2d 1341, 1343 (8th Cir. 1990); Hutsell v. Sullivan, 892 F.2d 747, 750 (8th Cir. 1989).

### III.
### DISCUSSION

The issue before the court is whether substantial evidence supports the Commissioner's final determination that Plaintiff was not disabled. Onstead, 962 F.2d at 804. Thus, even if there is

substantial evidence that would support a decision opposite to that of the Commissioner, the court must affirm his decision as long as there is substantial evidence in favor of the Commissioner's position. Cox, 495 F.3d at 617; Krogmeier, 294 F.3d at 1022.

In the Disability Report filed in conjunction with his application for SSI, Plaintiff alleged that he was disabled due to "heart problems, hypertension, [and] bypass [surgery]." Tr. 320. Plaintiff alleged, at the hearing, that he was disabled due to congestive heart failure, coronary artery disease, diabetes, degenerative disc disease of the lumbar spine, right rotator cuff repair, chronic obstructive pulmonary disease ("COPD"), non-displaced fracture of the left metatarsal, obesity, hypertension, trouble with his feet, sleep apnea, high cholesterol, knee pain, and depression. Plaintiff, who was fifty-eight years old at the time of the hearing, testified that he completed the tenth grade in high school; that he had a GED; that he had worked as an over-the-road truck driver commencing in 1970; that he last worked, in September 2005, when his employer went out of business; that, in 2005, he could not get a medical card to drive a truck because of his blood pressure and heart problems; that, when he worked as a truck driver, he did "long haul" and "shuttle driving" ; and that he could lift a twenty-five pound bag of dog food and that walking to the mail box was "too much" for him. Tr. 40-50, 68-69.

The ALJ found that Plaintiff had not engaged in substantial gainful activity since April 17, 2008, his application date[1]; that he had the severe impairments of congestive heart failure ("CHF"), coronary artery disease with residuals from bypass surgery performed in 1999, and degenerative disc

_____

[1] To the extent that the ALJ did not consider whether Plaintiff had engaged in substantial gainful activity since his alleged onset date, such a failure does not affect the outcome of this decision nor is it critical to the ALJ's ultimate determination that Plaintiff is not disabled. Senne v. Apfel, 198 F.3d 1065, 1067 (8th Cir. 1999) ("We have consistently held that a deficiency in opinion-writing is not a sufficient reason for setting aside an administrative finding where the deficiency had no practical effect on the outcome of the case.").

disease of the lumbar spine with residuals from a 1982 lumbar laminectomy and discectomy; that Plaintiff's other alleged impairments, including depression, were non-severe; that he did not have an impairment or combination of impairments which met or equaled a listed impairment; that Plaintiff had the RFC to perform the full range of light work; that Plaintiff's allegations of pain and limitations were not credible; that Plaintiff's past relevant work included over-the-road truck driver and shuttle driver; that Plaintiff was capable of performing his past relevant work as a shuttle truck driver as this job is generally performed in the economy; and that, therefore, Plaintiff was not disabled through the date of the ALJ's decision. Tr. 13-22.

Plaintiff contends that the ALJ's decision is not supported by substantial evidence because he "completely ignored or discounted" Plaintiff's alleged mental impairments and limitations upon finding that Plaintiff's mental impairment was non-severe. Plaintiff further contends that the ALJ did not apply the factors mandated by 20 C.F.R. §§ 404.1520-1521, 404.1529; that he did not give proper weight to the opinion of Stephen Jordan, Ph.D; that, based on Dr. Jordan's report and the report of Robert Cottone, Ph.D., Plaintiff met the "'De Minimis' burden of proof of more than a 'slight abnormality'"; and that the ALJ's RFC assessment is flawed because it did not account for Plaintiff's mental impairment. Doc. 14 at 25-30.

A.    **Plaintiff's Credibility:**

The court will first consider the ALJ's credibility determination, as the ALJ's evaluation of Plaintiff's credibility was essential to the ALJ's determination of other issues, including the severity of Plaintiff's alleged mental impairment. See Wildman v. Astrue, 596 F.3d 959, 969 (8th Cir. 2010) ("[The plaintiff] fails to recognize that the ALJ's determination regarding her RFC was influenced by his determination that her allegations were not credible.") (citing Tellez v. Barnhart, 403 F.3d 953, 957 (8th Cir. 2005)); 20 C.F.R. §§ 404.1545, 416.945 (2010).  As set forth more fully above, the

ALJ's credibility findings should be affirmed if they are supported by substantial evidence on the record as a whole; a court cannot substitute its judgment for that of the ALJ. <u>Guilliams</u>, 393 F.3d at 801; <u>Hutsell</u>, 892 F.2d at 750; <u>Benskin</u>, 830 F.2d at 882. To the extent that the ALJ did not specifically cite <u>Polaski</u>, case law, and/or Regulations relevant to a consideration of Plaintiff's credibility, this is not necessarily a basis to set aside an ALJ's decision where the decision is supported by substantial evidence. <u>Randolph v. Barnhart</u>, 386 F.3d 835, 842 (8th Cir. 2004); <u>Wheeler v. Apfel</u>, 224 F.3d 891, 895 n.3 (8th Cir. 2000); <u>Reynolds v. Chater</u>, 82 F.3d 254, 258 (8th Cir. 1996); <u>Montgomery v. Chater</u>, 69 F.3d 273, 275 (8th Cir. 1995). Additionally, an ALJ need not methodically discuss each <u>Polaski</u> factor if the factors are acknowledged and examined prior to making a credibility determination; where adequately explained and supported, credibility findings are for the ALJ to make. <u>See</u> <u>Lowe v. Apfel</u>, 226 F.3d 969, 972 (8th Cir. 2000). <u>See also</u> <u>Tucker v. Barnhart</u>, 363 F.3d 781, 783 (8th Cir. 2004) ("The ALJ is not required to discuss each <u>Polaski</u> factor as long as the analytical framework is recognized and considered."); <u>Strongson</u>, 361 F.3d at 1072; <u>Brown v. Chater</u>, 87 F.3d 963, 966 (8th Cir. 1996). In any case, "[t]he credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts." <u>Pearsall v. Massanari</u>, 274 F.3d 1211, 1218 (8th Cir. 2001). "If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, [a court] will normally defer to the ALJ's credibility determination." <u>Gregg v. Barnhart</u>, 354 F.3d 710, 714 (8th Cir. 2003). <u>See also</u> <u>Halverson v. Astrue</u>, 600 F.3d 922, 932 (8th Cir. 2010); <u>Cox v. Barnhart</u>, 471 F.3d 902, 907 (8th Cir. 2006). For the following reasons, the court finds that the reasons offered by the ALJ in support of his credibility determination are based on substantial evidence.

First, as considered by the ALJ, Plaintiff had no treatment for his alleged mental impairment during the relevant period. Tr. 19. A claimant's failure to seek medical treatment is inconsistent with

claims of a disabling impairment. See Edwards v. Barnhart, 314 F.3d 964, 967 (8th Cir. 2003) ("[T]he ALJ concluded, and we agree, that if her pain was as severe as she alleges, [Plaintiff] would have sought regular medical treatment."); Gwathney v. Chater, 104 F.3d 1043, 1045 (8th Cir. 1997) ("[Claimant's] failure to seek medical assistance for her alleged physical and mental impairments contradicts her subjective complaints of disabling conditions and supports the ALJ's decision to deny benefits."); Brown v. Chater, 87 F.3d 963, 965 (8th Cir. 1996); Rautio, 862 F. 2d at 179 (failure to seek aggressive treatment and limited use of prescription medications is not suggestive of disabling pain). As such, the court finds that the ALJ's considering that Plaintiff did not receive treatment for depression during the relevant period is supported by substantial evidence and that it is consistent with the Regulations and case law.

Second, as considered by the ALJ, Plaintiff's treatment records reflect that he denied having depression on March 7, 2008, when he said that he was "[n]ot at all" feeling down, depressed or hopeless. Tr. 19, 446. Additionally, as considered by the ALJ, Plaintiff's depression screens at the Department of Veterans' Affairs ("VA") were negative. Tr. 446, 639. In particular, it was specifically noted, on March 17, 2008, that Plaintiff did not meet the criteria for major depressive disorder and that he had no symptoms which required intervention. Tr. 478. A lack of objective medical evidence is a factor an ALJ may consider in determining a claimant's credibility. Forte v. Barnhart, 377 F.3d 892, 895 (8th Cir. 2004). Although an ALJ may not disregard a claimant's subjective allegations because they are not fully supported by objective medical evidence, an ALJ may properly discount subjective complaints if inconsistencies exist in the record as a whole. Gonzalez v. Barnhart, 465 F.3d 890, 895 (8th Cir. 2006) (citing Ramirez v. Barnhart, 292 F.3d 576, 581 (8th cir. 2002)); 20 C.F.R. § § 404.1529(c), 416.929(c). As such, the court finds that the ALJ's decision, in this regard, is supported by substantial evidence and that it is consistent with the Regulations and case law.

Third, as considered by the ALJ, Plaintiff did not allege disability due to mental problems upon making his application for benefits. Tr. 19. As stated above, his disability report listed only physical problems. Tr. 320. Also, Plaintiff did not list a mental impairment on a Supplemental Questionnaire completed on March 7, 2008. Tr. 327. The Eighth Circuit holds that it is significant that a claimant has failed to alleged disability due to a particular condition. See Wall v. Astrue, 561 F.3d 1048, 1062 (8th cir. 2009) (holding that because the claimant did not allege that she suffered from a severe mental impairment, the "ALJ's failure to discus listing 12.05C [was], therefore unsurprising"); Dunahoo, 241 F.3d at 1039 (holding that the fact that the claimant did not allege depression on his benefits application was significant even though evidence of depression was later developed). The court finds that the ALJ's decision, in this regard, is supported by substantial evidence and that it is consistent with the Regulations and case law.

Fourth, the ALJ considered that Plaintiff managed his own affairs; that he took care of his disabled girlfriend; and that taking care of the girlfriend required that Plaintiff take care of his girlfriend's activities of daily living, including bathing and dressing her. Tr. 19, 22. The court notes that Plaintiff testified at the hearing that he mowed his grass with a riding lawn mower; that he worked on older vehicles; that he could walk about a block to a block and a half before his hips started to bother him; that he could lift a twenty-five pound bag of dog food; that he drove to the mailbox to get his mail; and that he could not walk around in a store. Tr. 68-69, 77-78. Further, Plaintiff stated in the March 2008 Supplemental Questionnaire that he drove to doctors' appointments "up to 5 times a month"; that the distance he drove to doctors' appointments varied from 200 miles for his VA appointments to 6 miles to town; that he prepared breakfast and supper in an average day; that "most of the time during a day" he "walk[ed] around trailer park when [he] [could] or watch[ed] TV" and would fall asleep; that he was able to do laundry, dishes, make and change beds,

vacuum/sweep, take out the trash, do home repairs and car maintenance, mow the lawn, garden and go to the post office; that his gardening involved "a little, nothing big"; that he could not rake leaves; that he went shopping "1-2 times a month"; and that he could use a check book and count change. Tr. 327-34. While the undersigned appreciates that a claimant need not be bedridden before he can be determined to be disabled, a plaintiff's daily activities can nonetheless be seen as inconsistent with his subjective complaints of a disabling impairment and may be considered in judging the credibility of complaints. Eichelberger, 390 F.3d at 590 (holding that the ALJ properly considered that the plaintiff watched television, read, drove, and attended church upon concluding that subjective complaints of pain were not credible); Dunahoo v. Apfel, 241 F.3d 1033, 1038 (8th Cir. 2001); Onstead, 962 F.2d at 805; Murphy v. Sullivan, 953 F.2d 383, 386 (8th Cir. 1992); Benskin, 830 F.2d at 883; Bolton v. Bowen, 814 F.2d 536, 538 (8th Cir. 1987). Indeed, the Eighth Circuit holds that allegations of disability "may be discredited by evidence of daily activities inconsistent with such allegations." Davis v. Apfel, 239 F.3d 962, 967 (8th Cir. 2001) (citing Benskin v. Bowen, 830 F.2d 878, 883 (8th Cir. 1987)). "Inconsistencies between [a claimant's] subjective complaints and [his] activities diminish [his] credibility." Goff, 421 F.3d at 792 (citing Riggins v. Apfel, 177 F.3d 689, 692 (8th Cir. 1999)). See also Haley v. Massanari, 258 F.3d 742, 748 (8th Cir. 2001); Nguyen v. Chater, 75 F.3d 429, 439-41 (8th Cir. 1996) (holding that a claimant's daily activities, including visiting neighbors, cooking, doing laundry, and attending church, were incompatible with disabling pain and affirming denial of benefits at the second step of analysis).

An ALJ, however, is not required to believe all of a claimant's assertions concerning his daily activities. Johnson v. Chater, 87 F.3d 1015, 1018 (8th Cir. 1996). "[S]ubjective complaints of pain cannot be disregarded solely because there is no supporting medical evidence, but they can be discounted if the ALJ finds inconsistencies in the record as a whole." Zeiler v. Barnhart, 384 F.3d

932, 936 (8th Cir. 2004) (citing Johnson v. Chater, 108 F.3d 942, 947 (8th Cir. 1997)). A record, such as that in the matter under consideration, which does not reflect physician imposed restrictions suggests that a claimant's restrictions in daily activities are self-imposed rather than by medical necessity. See Zeiler, 384 F.3d at 936 ("[T]here is no medical evidence supporting [the claimant's] claim that [he] needs to lie down during the day."); Fredrickson v. Barnhart, 359 F.3d 972, 977 n.2 (8th Cir. 2004) ("There is no evidence in the record that [the claimant] complained of severe pain to his physicians or that they prescribed that he elevate his foot or lie down daily."). The court finds, therefore, that the ALJ properly considered Plaintiff's daily activities upon choosing to discredit his allegation that he is disabled. The court further finds that substantial evidence supports the ALJ's decision in this regard.

Fifth, the ALJ considered that Plaintiff worked until his company went out of business. Tr. 20. Leaving work for reasons unrelated to an alleged disabling impairment weighs against a finding of disability. Browning v. Sullivan, 958 F.2d 817, 821 (8th Cir. 1992). The court finds that the ALJ's decision, in this regard, is supported by substantial evidence and that it is consistent with the Regulations and case law.

In conclusion, the court finds that the ALJ's consideration of Plaintiff's credibility is based on substantial evidence and that it is consistent with the Regulations and case law.

**B.      Opinion of Dr. Jordan:**

Plaintiff contends that the ALJ did not give proper weight to Dr. Jordan's opinion and that his opinion supports a finding that Plaintiff is disabled. On June 25, 2008, Plaintiff saw Dr. Jordan for a psychological evaluation. Dr. Jordan's report states that Plaintiff said he had memory problems starting in 1999, including that he had difficulty remembering peoples' names and dates; that he lost focus when driving; that he would leave the stove on after cooking and leave the oven on all night;

that he had walked away from running water in the sink; that he had poor reading and math skills; that

he was irritable; that he avoided crowds; and that he experienced helplessness and anhedonia, fatigue,

and loss of energy. Tr. 525-27. Dr. Jordan further reported that Plaintiff had a "moderately" slowed

cognitive processing rate; that Plaintiff denied feeling depressed; that Plaintiff did have signs

suggestive of depression, including irritability, hopelessness, and low energy and motivation; that

Plaintiff had the ability to understand and remember very short and simple instructions; that he could

make simple work-related decisions; and hat he had moderately impaired ability to complete a normal

workday without interruptions from psychologically based symptoms and perform at a consistent

pace without interruptions from psychologically based symptoms and perform at a consistent pace

without an unreasonable number of rest periods. Dr. Jordan further reported that Plaintiff's thought

process was logical and sequential and that he was alert and oriented. Dr. Jordan's diagnostic

impression, at Axis I, was "Depression NOS; rule out specific learning disability. At Axis II, Dr.

Jordan's impression was "Rule out borderline intellectual functioning." At Axis II, it was "Memory

loss; hypertension; history of CABG and MI; [and] chronic low back pain." At Axis IV, it was

"chronic health conditions. At Axis V, Dr. Jordan's impression was that Plaintiff had a Global

Assessment of Functioning ("GAF") of 65.[2] Tr. 525-28.

First, to the extent Plaintiff contends that Dr. Jordan's report supports a finding that he is

disabled, as considered by the ALJ, Dr. Jordan found that Plaintiff had a GAF of 65. A GAF of 65

---

[2]     Global assessment of functioning ("GAF") is the clinician's judgment of the
individual's overall level of functioning, not including impairments due to physical or
environmental limitations. See Diagnostic and Statistical Manual of Mental Disorders, DSM-IV,
30-32 (4th ed. 1994). Expressed in terms of degree of severity of symptoms or functional
impairment, GAF scores of 31 to 40 represent "some impairment in reality testing or
communication or major impairment in several areas, such as work or school , family relations,
judgment, thinking, or mood," 41 to 50 represents "serious," scores of 51 to 60 represent
"moderate," scores of 61 to 70 represent "mild," and scores of 90 or higher represent absent or
minimal symptoms of impairment. Id. at 32.

represents only mild limitations. See Brown v. Astrue, 611 F.3d 941, 955 (8th Cir. 2010) ("[A] GAF score of 65 [or 70] ... reflects 'some mild symptoms (e.g. depressed mood or mild insomnia) OR some difficulty in social, occupational, or school functioning ... but generally functioning pretty well, has some meaningful interpersonal relationships.' " (quoting Kohler v. Astrue, 546 F.3d 260, 263 (2d Cir. 2008) (quoting Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. 2000)) (alterations in original).

Second, Dr. Jordan was an examining doctor and not a treating doctor. As such, his opinion is not controlling. See Tilley v. Astrue, 580 F.3d 675, 679 (8th Cir. 2009) (quoting 20 C.F.R. § 404.1527(d)(2) (2000)). ("A treating physician's opinion is given controlling weight if it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [a claimant's] case record.'").

Third, Dr. Jordan based much of his opinion on Plaintiff's self-reporting of his symptoms. In fact, Dr. Jordan acknowledged that he did not have Plaintiff's treatment records and stated that the records did "not contain any background medical records beyond the patients' self-reported questionnaire." Tr. 526. See Kirby v. Astrue, 500 F.3d 705, 709 (8th Cir. 2007) (holding that the ALJ was entitled to give less weight to the opinion of a treating doctor where the doctor's opinion was based largely on the plaintiff's subjective complaints rather than on objective medical evidence) (citing Vandenboom v. Barnhart, 421 F.3d 745, 749 (8th Cir. 2005)).

Fourth, the ALJ did consider Dr. Jordan's report and noted that it was the only evidence that Plaintiff suffered a mental impairment.

Fifth, to the extent Dr. Jordan opined that Plaintiff is unable to work, a doctor's opinion that a claimant is not able to return to work "involves an issue reserved for the Commissioner and

therefore is not the type of 'medical opinion' to which the Commissioner gives controlling weight." Ellis v. Barnhart, 392 F.3d 988, 994 (8th Cir. 2005).

Sixth, as discussed above in regard to Plaintiff's credibility, the ALJ considered that Plaintiff did not seek treatment for a mental condition and the record reflects that symptoms consistent with such a condition were denied and/or not demonstrated to medical providers. Social Security Regulation ("SSR") 96-2p states, in its "Explanation of Terms," that it "is an error to give an opinion controlling weight" where "it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with other substantial evidence in the case record." 1996 WL 374188, *2 (S.S.A. July 2, 1996).

Seventh, the ALJ gave good reason for not giving controlling weight to Dr. Jordan's opinion. See SSR 96-2p at *5 (clarifying that 20 C.F.R. §§ 404.1527 and 416.927 require that the ALJ provide "good reasons in the notice of the determination or decision for the weight given to a treating source's medical opinion(s)." See also Martise, 641 F.3d at 925 (quoting Davidson v. Astrue, 501 F.3d 987, 990 (8th Cir. 2007)).

In conclusion the court finds that the ALJ gave proper weight to Dr. Jordan's opinion and that the ALJ's decision, in this regard, is supported by substantial evidence.

## C.     Opinion of Dr. Cottone:

On July 18, 2009, Dr. Cottone completed a psychiatric review technique form for the Social Security Administration. He did not examine Plaintiff and concluded that Plaintiff had mild restrictions of daily living and mild difficulties in maintaining concentration, persistence and pace. He assessed Plaintiff has having a non-severe mental impairment. Tr. 530-40. Plaintiff contends that Dr. Cottone's findings "sail past the 'De Minimus' standard" for determining the severity of an impairment. Doc. 14 at 30.

As stated above, at Step 2 of the sequential analysis, an ALJ is required to determine if a claimant has a severe impairment or combination of impairments. "The severity Regulation adopts a standard for determining the threshold level of severity: the impairment must be one that 'significantly limits your physical or mental ability to do basic work activities.'" Bowen v. Yuckert, 482 U.S. 137, 153 n.11 (1987) (quoting 20 CFR § 404.1520(c) (1986)). An impairment or combination of impairments are not severe if they are so slight that it is unlikely that the claimant would be found disabled even if his age, education, and experience were taken into consideration. Id. at 153 ("The severity regulation increases the efficiency and reliability of the evaluation process by identifying at an early stage those claimants whose medical impairments are so slight that it is unlikely they would be found to be disabled even if their age, education, and experience were taken into account."). See also Page v. Astrue, 484 F.3d 1040, 1043 (8th Cir. 2007) (holding that if a claimant's impairments would have no more than a minimal effect on his ability to work, they do not satisfy the requirement of step two).

First, 20 C.F.R. § 404.1521(b)(3)-(6) includes in basic work activities: Understanding, carrying out, and remembering simple instructions; Use of judgment; Responding appropriately to supervision, co-workers and usual work situations; and Dealing with changes in a routine work setting. Dr. Cottone found only that Plaintiff had mild restrictions in these areas. 20 C.F.R. § 416.920a(d) provides that a finding of "mild" usually means that a mental impairment is non-severe. Second, Plaintiff's argument is inconsistent with Dr. Cottone's finding that Plaintiff's mental impairment was non-severe. Third, the ALJ did take into consideration Dr. Cottone's opinion and found that it supported a finding that Plaintiff did not have a severe mental impairment. See 20 C.F.R. §§ 404.1527(f)(2)(i), 416.927(f)(2)(i) (State agency medical consultants are highly qualified experts in Social Security disability evaluation; therefore, ALJs must consider their findings as opinion

evidence.); Roberson v. Astrue, 481 F.3d 1020, 1025 (8th Cir. 2007) (moderate limitations do not prevent an individual from functioning "satisfactorily"). The court finds that the ALJ's consideration of Dr. Cottone's opinion is supported by substantial evidence and that, in this regard, it is consistent with the Regulations and case law. Further, the court finds that Plaintiff's argument that Dr. Cottone's assessment supports a finding that he met his burden to establish that his mental impairment is severe is without merit.

**D.     ALJ's Consideration of 20 C.F.R. §§ 404.1520-1521, 404.1529:**

Plaintiff contends that the ALJ did not consider Plaintiff's alleged mental impairment in a manner consistent with the regulations. The mere existence of a mental condition, however, is not per se disabling. See Dunlap v. Harris, 649 F.2d 637, 638 (8th Cir. 1981). The Commissioner has supplemented the familiar five-step sequential process for generally evaluating a claimant's eligibility for benefits with additional regulations dealing specifically with mental impairments. 20 C.F.R. § 404.1520a. A special procedure must be followed at each level of administrative review. See Pratt v. Sullivan, 956 F.2d 830, 834 n.8 (8th Cir. 1992) (per curiam).

The special considerations applicable to consideration of an alleged mental impairment include recording pertinent signs, symptoms, and findings to determine if a mental impairment exists. 20 C.F.R. § 404.1520a(b)(1). These are gleaned from a mental status exam or psychiatric history and must be established by medical evidence consisting of signs, symptoms, and laboratory findings. 20 C.F.R. § § 404.1520a(b)(1). If a mental impairment is found, the ALJ must then analyze whether certain medical findings relevant to ability to work are present or absent. 20 C.F.R.§ 404.1520a(b)(1). The procedure then requires the ALJ to rate the degree of functional loss resulting from the impairment in four areas of function which are deemed essential to work. 20 C.F.R. § 404.1520a(c)(2). Those areas are: (1) activities of daily living; (2) social functioning; (3)

concentration, persistence or pace; and (4) deterioration or decompensation in work or work-like settings. 20 C.F.R. § 404.1520a(c)(3).

The limitation in the first three functional areas of activities of daily living (social functioning and concentration, persistence, or pace) is assigned a designation of either "none, mild, moderate, marked, [or] extreme." 20 C.F.R. § 404.1520a(c)(4). The degree of limitation in regard to episodes of decompensation is determined by application of a four-point scale: "[n]one, one or two, three, four or more." Id. When "the degree of []limitation in the first three functional areas" is "none" or "mild" and "none" in the area of decompensation, impairments are not severe, "unless the evidence otherwise indicates that there is more than a minimal limitation in [a claimant's] ability to do basic work activities." 20 C.F.R. § 404.1520a(d)(1). When it is determined that a claimant's mental impairment(s) are severe, the ALJ must next determine whether the impairment(s) meet or are equivalent in severity to a listed mental disorder. This is done by comparing the medical findings about a claimant's impairment(s) and the rating of the degree of functional limitation to the criteria of the appropriate listed mental disorder. See 20 C.F.R. § 404.1520a(d)(2). If it is determined that a claimant has "a severe mental impairment(s) that neither meets nor is equivalent in severity to any listing," the ALJ must then assess the claimant's RFC. 20 C.F.R. § 404.1520a(d)(3).

The court further notes that 20 C.F.R. Ch. lll, Pt. 404, Supt. P, App.1 § 12.00(a) states, in relevant part, that:

> The evaluation of disability on the basis of mental disorders requires documentation of a medically determinable impairment(s), consideration of the degree of limitation such impairment(s) may impose on your ability to work, and consideration of whether these limitations have lasted or are expected to last for a continuous period of at least 12 months.

Upon finding that Plaintiff did not suffer from a mental disability as a result of alleged depression, the ALJ considered the medical evidence, including the records of the VA and Dr.

Jordan's report, as required by the first step of a mental impairment analysis, as well as Plaintiff's functional limitations, as described by Plaintiff and Dr. Jordan. See Pratt, 956 F.2d at 835; 20 C.F.R. §§ 404.1520a(b)(1), 404.1508.

Consistent with the requirements of § 404.1520(a)(b)-(c), after considering the medical evidence, the ALJ then considered Plaintiff's functional limitations and concluded that he had no restrictions of activities of daily living; that he had no difficulties in maintaining social functioning; that he had no more than mild difficulties in maintaining concentration, his persistence or pace; and that he had no episodes of deterioration or decompensation in work or work-like settings. Tr. 21. See Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001) (holding that while an ALJ is not limited to considering medical evidence of a mental impairment, the ALJ is required to consider at least some supporting evidence from a professional).

The ALJ then found that the criteria of Listing 12.04 had not been satisfied and that Plaintiff's "depression not otherwise specified [had] been no more than a 'non-severe' impairment which [had] been no more than a slight abnormality which resulted in no more than minimal limitations on [Plaintiff's] ability to perform basic work-related activities." Tr. 21-22. As discussed above, the ALJ explained that he gave significant weight to the GAF of 65 which Dr. Jordan assigned to Plaintiff; the ALJ considered that Dr. Jordan relied, to some extent, on Plaintiff's own allegations and description of his limitations; and that the GAF score of 65 is inconsistent with a finding that Plaintiff had limitations which were more than mild. Tr. 22. The ALJ also stated that he gave great weight to Dr. Cottone's opinion, as discussed above. The court has found that the ALJ gave proper weight to the opinions of both Dr. Jordan and Dr. Cottone. Further, the ALJ considered that no doctor ever opined that Plaintiff's alleged mental impairment met or equaled a listing. Tr. 22. Thus, the court finds that the ALJ's consideration of Plaintiff's alleged mental

impairment is based on substantial evidence and that it is consistent with the Regulations and case law.

To the extent the ALJ may not have addressed every criteria specified in the regulations for determining the severity of an alleged mental impairment, this does not indicate that such factors were not considered. See Moore ex rel. Moore v. Barnhart, 413 F.3d718, 721 n.3 (8th Cir. 2005) ("The fact that the ALJ's decision does not specifically mention the [particular listing] does not affect our review."); Montgomery v. Chater, 69 F.3d 273, 275 (8th Cir. 1995). Moreover, the fact that the ALJ may not have elaborated to the extent required by the regulations does not require reversal because the record supports his overall conclusion. Karlix v. Barnhart, 457 F.3d 742, 746 (8th Cir.2006) (citing Pepper ex rel. Gardner v. Barnhart, 342 F.3d 853, 855 (8th Cir. 2003)).

**E.       Plaintiff's RFC and VE Testimony:**

Plaintiff contends that the ALJ's failure to assess his alleged mental impairment as severe made it impossible for the ALJ to properly determine his RFC or for the VE to make a proper finding in regard to whether there was work which Plaintiff could perform. Doc. 14 at 29.

The Regulations define RFC as "what [the claimant] can do" despite his or her "physical or mental limitations." 20 C.F.R. § 404.1545(a). "When determining whether a claimant can engage in substantial employment, an ALJ must consider the combination of the claimant's mental and physical impairments." Lauer v. Apfel, 245 F.3d 700, 703 (8th Cir. 2001). The ALJ found that Plaintiff had the RFC for light work and that, given his age and education, he could perform his past relevant work as a shuttle driver as it is generally performed in the economy. Tr. 29.

The Regulations define light work as 'involv[ing] lifting no more than 20 pounds at a time with frequent lifting or carrying of objects up to 10 pounds." 20 C.F.R. § 404.1567(b). Additionally, "[s]ince frequent lifting or carrying requires being on one's feet up to two-thirds of a workday, the

full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." SSR 83-10, 1983 WL 31251,*6. Significantly, as discussed above, Plaintiff said that he could lift twenty-five pounds.

The ALJ determined Plaintiff's RFC based on all relevant, credible evidence in the record, "'including the medical records, observations of treating physicians and others, and an individual's own description of his limitations.'" Tucker v. Barnhart, 363 F.3d 781, 783 (8th Cir. 2004) (quoting McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000)). See also Anderson v. Shalala, 51 F.3d. 777, 779 (8th Cir. 1995). The ALJ proceeded analytically, from ascertaining the extent of Plaintiff's impairments to determining the kind of work he could still do despite his impairments. In particular, the ALJ considered Plaintiff's medical records and found that he did not have a severe mental impairment. Indeed, Plaintiff's RFC was "'a medical question.'" Lauer, 245 F.3d at 704 (quoting Singh v. Apfel, 222 F.3d 448, 451 (8th Cir. 2000)). The Eighth Circuit clarified in Lauer, 245 F.3d at 704, that "'[s]ome medical evidence,' Dykes v. Apfel, 223 F.3d 865, 867 (8th Cir. 2000) (per curiam), must support the determination of the claimant's RFC, and the ALJ should obtain medical evidence that addresses the claimant's 'ability to function in the workplace,' Nevland v. Apfel, 204 F.3d 853, 858 (8th Cir. 2000)." Thus, an ALJ is "required to consider at least some supporting evidence from a professional." Id. See also Vossen v. Astrue, 612 F.3d 1011, 1016 (8th Cir. 2010) ("The ALJ bears the primary responsibility for determining a claimant's RFC and because RFC is a medical question, some medical evidence must support the determination of the claimant's RFC."); Eichelberger, 390 F.3d at 591. The court finds that the ALJ's RFC determination, in this regard, is based on substantial evidence and that it is consistent with the requirements of the Regulations and case law.

As stated above, at step 4 the claimant has the burden of persuasion to demonstrate his or her RFC. Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004). "If a claimant establishes [his]inability to do past relevant work, then the burden of proof shifts to the Commissioner." Goff, 421 F.3d at 790 (citing Eichelberger, 390 F.3d at 591). In contrast to the first four steps of the sequential evaluation where the claimant carries the burden of proof, the Commissioner has the burden of production at step 5. Charles v. Barnhart, 375 F.3d 777, 782 n.5 (8th Cir. 2004). At step 5, "[t]he burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner." Goff, 421 F.3d at 790. Also, at step 5, where a claimant's RFC is expressed in terms of exertional categories, it must be determined whether the claimant can do the full range of work at a given exertional level. The claimant must be able to "perform substantially all of the exertional and nonexertional functions required in work at that level. Therefore, it is necessary to assess the individual's capacity to perform each of these functions in order to decide which exertional level is appropriate and whether the individual is capable of doing the full range of work contemplated by the exertional level." Id. In any case, "[a] disability claimant has the burden to establish [his or] her RFC." Eichelberger, 390 F.3d at 591 (citing Masterson, 363 F.3d at 737). See also Vossen, 612 F.3d at 1016.

As required by the regulations and case law, the ALJ in the matter under consideration identified Plaintiff's functional limitations and restrictions, and then assessed his work-related abilities on a function-by-function basis. See Masterson, 363 F.3d at 737; Harris v. Barnhart, 356 F.3d 926, 929 (8th Cir. 2004). The RFC need only include a plaintiff's credible limitations. See Tindell v. Barnhart, 444 F.3d 1002, 1007 (8th Cir. 2006) ("The ALJ included all of Tindell's credible limitations in his RFC assessment, and the ALJ's conclusions are supported by substantial evidence in the record."). Pursuant to this requirement, the ALJ found that Plaintiff's subjective complaints

were not credible and further found that he did not have a severe mental impairment. The court has found above that these findings of the ALJ are supported by substantial evidence. Moreover, the ALJ's determination of Plaintiff's RFC is precise as it directly addresses his restrictions and the requirements of light work and/or the requirements of his past relevant work. Additionally, the ALJ's assessment of Plaintiff's RFC is based upon and is consistent with all of the relevant evidence. See McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000) ("The Commissioner must determine a claimant's RFC based on all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations.") (citing Anderson v. Shalala, 51 F.3d 777, 779 (8th Cir.1995). The court finds, therefore, that the ALJ's RFC determination is based on substantial evidence and that it is consistent with the regulations and case law.

After determining Plaintiff's RFC the ALJ posed a hypothetical to a VE which described a person of Plaintiff's age and with his education and RFC. The VE testified that Plaintiff's prior work included a shuttle bus driver and/or a shuttle truck driver; that this job is considered medium work; that it was light work as Plaintiff performed it; and that the hypothetical person described by the ALJ would be capable of performing Plaintiff's past relevant work as a shuttle driver. Tr. 82, 87. The ALJ included in the hypothetical posed to the VE, and upon which hypothetical the ALJ relied, only those of Plaintiff's limitations which the ALJ found credible. See Martise, 691 F.3d at 927 ("The ALJ's hypothetical question to the vocational expert needs to include only those impairments that the ALJ finds are substantially supported by the record as a whole.") (quoting Lacroix v. Barnhart, 465 F.3d 881, 889 (8th Cir.2006)); Guilliams, 393 F.3d at 804 (holding that a proper hypothetical sets forth impairments supported by substantial evidence and accepted as true by the ALJ); Gilbert v. Apfel, 175 F.3d 602, 604 (8th Cir. 1999) ("In posing hypothetical questions to a vocational

expert, an ALJ must include all impairments he finds supported by the administrative record.");

Sobania v. Sec'y of Health, Educ. & Human Servs., 879 F.2d 441, 445 (8th Cir. 1989); Rautio, 862

F.2d at 180. Thus, this hypothetical was sufficient because it set forth Plaintiff's impairments that

were accepted as true by the ALJ. Haggard v. Apfel, 175 F.3d 591, 595 (8th Cir. 1999) (holding that

the ALJ need not include additional complaints in the hypothetical not supported by substantial

evidence); Hunt v. Massanari, 250 F.3d 622, 625 (8th Cir. 2001); Sobania, 879 F.2d at 445; Roberts

v. Heckler, 783 F.2d 110, 112 (8th Cir. 1985). Where a hypothetical question precisely sets forth

all of the claimant's physical and mental impairments, a VE's testimony constitutes substantial

evidence supporting the ALJ's decision. Martise v. Astrue, 641 F.3d 909, 927 (8th Cir. 2011)

("Based on our previous conclusion ... that 'the ALJ's findings of [the claimant's] RFC are supported

by substantial evidence,' we hold that '[t]he hypothetical question was therefore proper, and the

VE's answer constituted substantial evidence supporting the Commissioner's denial of benefits.'")

(quoting Lacroix v. Barnhart, 465 F.3d 881, 889 (8th Cir. 2006); Robson v. Astrue, 526 F.3d 389,

392 (8th Cir. 2008) (holding that a VE's testimony is substantial evidence when it is based on an

accurately phrased hypothetical capturing the concrete consequences of a claimant's limitations);

Wingert v. Bowen, 894 F.2d 296, 298 (8th Cir. 1990).

        The court has found above that the ALJ's determination of Plaintiff's RFC is based on

substantial evidence. Based on the record as a whole, including Plaintiff's testimony and medical

records and the testimony of the VE, the court finds that the ALJ's conclusion that Plaintiff is not

precluded from performing the full range of activities required by his past relevant work as a shuttle

driver, as he performed it, is supported by substantial evidence. See Sanders, 983 F.2d at 823. As

such, any arguments which Plaintiff makes to the contrary are without merit. Because the ALJ

found that Plaintiff can perform his past relevant work, the court finds that the ALJ properly found that Plaintiff is not disabled and that his decision, in this regard, is based on substantial evidence.

## IV.
## CONCLUSION

For the reasons set forth above, the court finds that substantial evidence on the record as a whole supports Commissioner's decision that Plaintiff is not disabled.

Accordingly,

**IT IS HEREBY RECOMMENDED** that the relief sought by Plaintiff in his Complaint and Brief in Support of Complaint be **DENIED**; Docs. 1, 17,

**IT IS FURTHER RECOMMENDED** that a separate judgment be entered incorporating this Memorandum Opinion.

The parties are advised that they have fourteen (14) days in which to file written objections to these recommendations pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact.  See Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990).

/s/Mary Ann L. Medler
MARY ANN L. MEDLER
UNITED STATES MAGISTRATE JUDGE


Dated this 3rd day of February, 2012.